IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
SHEILA SIMS, et al,                                     : CASE NO. 1:12 CV 00096
                                                        :
                                           Plaintiffs,  : <u>MEMORANDUM OF OPINION AND</u>
                                                        : <u>ORDER</u>
              -vs-                                      :
                                                        :
                                                        :
CITIMORTGAGE, INC., et al,                              :
                                          Defendants.   :
------------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

     The plaintiffs Sheila and Roger W. Sims allege that the defendant CitiMortgage wrongfully foreclosed on their home and committed acts in violation of state law and various federal consumer protection laws. The following motions are pending: (1) plaintiffs' amended motion for leave to file a second amended complaint (Doc. 31); (2) plaintiffs' motion for leave to supplement the second amended complaint or, in the alternative, the first amended complaint (Doc. 40); and (3) defendant's motion for partial judgment on the pleadings (Doc. 20). The Court will rule as follows:

     Plaintiffs' amended motion for leave to file a second amended complaint will be granted in part and denied in part. Insofar as the motion seeks to voluntarily dismiss Counts One, Four, Six, Eight, and Ten, as alleged in the first amended complaint, it will be granted. Therefore, plaintiffs' claims for breach of contract, negligence, negligence in mortgage servicing, and breach of the implied covenant of good faith and fair dealing will be dismissed. The motion will be otherwise denied.

Plaintiffs' motion to supplement will be denied.

Defendant's motion for partial judgment on the pleadings will be granted in part and denied in part. The motion is granted as to plaintiffs' claim for negligent infliction of emotional distress. The motion will be denied as to the plaintiffs' claims under the Ohio Consumer Sales Practices Act ("OCSPA"), the Truth in Lending Act ("TILA"), and the Fair Debt Collection Practices Act ("FDCPA"), as alleged in the first amended complaint. Only these statutory claims, along with the plaintiffs' claim under the Real Estate Settlement Procedures Act, whose dismissal the defendant did not seek, will survive this order.

Reasons are stated below.

**I. Background**

For the purposes of the pending motions, the facts are summarized as follows. After defaulting on their residential mortgage, the plaintiffs filed for chapter 13 bankruptcy reorganization on 12 October 2004. (Amended Complaint, ¶12).  On 15 January 2005, the defendant CitiMortgage became the mortgage owner and/or servicer. (Amended Complaint, ¶6; Defendant's Ex. B). The plaintiffs made timely payments in bankruptcy. (Amended Complaint, ¶¶1, 21). On 28 August 2008, the defendant acknowledged that the plaintiffs' arrearages were satisfied, and the bankruptcy court thereafter issued an order stating that the plaintiffs' obligations to the defendant were current and their defaults cured. (Amended Complaint, ¶¶17-18).

On 2 February 2009, the bankruptcy case was closed, though it appears that the defendant still held a mortgage on the plaintiffs' property. (Amended Complaint, ¶¶19-

20). The plaintiffs sent Qualified Written Requests pursuant to RESPA for specific information as to repayment and reinstatement. (Amended Complaint, ¶23). The plaintiffs maintain that the defendant never addressed these requests in accordance with the law, although they did learn that, by the defendant's records, they were about $4,000 in arrears. (Amended Complaint, ¶24). The defendant was unable to explain the default. (Amended Complaint, ¶26). On 10 December 2009, the defendant filed a foreclosure action against the plaintiffs. (Amended Complaint, ¶27). The plaintiffs counterclaimed and argued that at all times relevant they had timely paid their mortgage. (Amended Complaint, ¶28).

      The foreclosure case ended in settlement pursuant to a confidential agreement. (Amended Complaint, ¶29). The agreement included a loan modification agreement, effective 1 August 2010. (Amended Complaint, ¶30). The plaintiffs allege that they made all payments in a complete and timely manner. (Amended Complaint, ¶31). However, in April 2011, delinquency charges began appearing on the plaintiffs' account, which they disputed. (Amended Complaint, ¶¶32-33). In May, the plaintiffs sent a Qualified Written Request to the defendant, to which, they maintain, the defendant failed to properly respond. (Amended Complaint, ¶¶38-39). The plaintiffs then discovered that the disputed charges related to attorneys' fees and costs that the defendant had incurred during the 2009 foreclosure action. (Amended Complaint, ¶¶41-42). The plaintiffs maintain that these charges came in violation of the confidential settlement agreement. (Amended Complaint, ¶42). On 25 May 2011, the defendant sent the plaintiff a pre-foreclosure letter to provide the plaintiffs some options so as to avoid a foreclosure. (Amended Complaint, ¶44). The plaintiffs maintain that this second threatened

foreclosure is wrongful like the first. (Amended Complaint, ¶45).

The plaintiffs filed suit in state court, which was removed to this Court on 13 January 2012. (Doc. 1). The plaintiffs have since filed an amended complaint alleging breach of contract; violations of the Ohio Consumer Sales Practices Act; violations of the Truth in Lending Act; Negligence; violations of the Federal Debt Collection Practices Act; negligence in mortgage servicing; negligent infliction of emotional distress; violations of the Real Estate Settlement Procedures Act; and breach of the implied covenant of good faith and fair dealing. On the heels of an answer denying liability, the defendant filed a motion for partial judgment on the pleadings, seeking dismissal of all claims except the RESPA allegations. (Doc. 20).

## II. Preliminary Motions and Procedure

Before ruling on the defendant's motion for judgment on the pleadings, the Court will untangle what has developed into a bit of a procedural knot. The defendant's motion for judgment on the pleadings was fully briefed and ready for the Court's consideration on 1 October 2012. (Docs. 20, 23, 25). A flurry of submissions began on 31 October 2012, when the plaintiffs filed a surreply without the Court's leave. (Doc. 29). This spawned a motion to strike from the defendant, an opposition from the plaintiffs, defendant's reply, and plaintiffs' motion for leave to file a surreply to defendant's reply in support of its motion to strike. (Docs. 35, 37, 38, 39). Also on 31 October 2012, the plaintiffs filed a motion for leave to amend the complaint and a number of other documents, all of which were withdrawn the following day. (Docs. 26, 27, 28, 32, 33). On 1 November 2012, the plaintiffs went on to file an amended motion for leave to file a

4

second amended complaint, which produced an opposition from the defendants and a reply from the plaintiffs. (Docs. 31, 36, 37). Then, on 20 December 2012, the plaintiffs filed a motion for leave to supplement the second amended complaint or, in the alternative, the first amended complaint, along with supplemental case citations pertaining to their motion for leave to file a surreply to the defendant's reply in support of the motion to strike. (Docs. 40, 41).

The Court first considers the plaintiffs' motion for leave to file a second amended complaint. The plaintiffs' proposed second amended complaint adds no new claims, but seeks to eliminate some, including their claims for breach of contract, negligence, negligence in mortgage servicing, and breach of the implied covenant of good faith and fair dealing. While the allegations in new complaint are revised and reordered, the substance appears much the same. In requesting leave, the plaintiffs do not explain the purpose or need for allowing them to amend.

Pursuant to Federal Rule 15(a),"[t]he court should freely give leave when justice so requires."  This decision is committed to the Court's sound discretion.  Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir.1983).  Several factors may be considered in determining whether to permit an amendment.  Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision.  Foman v. Davis, 371 U.S. 178, 182 (1962).  Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.  Head v. Jellico Hous. Auth., 870 F.2d 1117, 1123 (6th Cir.1989) (quoting Hageman v. Signal L.P. Gas, Inc.,

5

486 F.2d 479, 484 (6th Cir.1973)). Delay by itself is not sufficient reason to deny a motion to amend. Id. However, a party must act with due diligence if it intends to take advantage of the Rule's liberality. United States v. Midwest Suspension & Brake, 49 F.3d 1197, 1202 (6th Cir. 1995).

After careful consideration of this issue, the Court will grant the motion in part, but only insofar as the plaintiffs seek to voluntarily dismiss Counts One, Four, Six, Eight, and Ten of the first amended complaint. The motion will otherwise be denied. This is for two reasons. First, the plaintiffs offer no arguments as to why justice requires a grant of leave, but simply request that the Court do so. The reasons why justice might require it are not readily apparent on the face of the second amended complaint, as it does not appear to represent a material, substantive change to the existing complaint. Except for dismissing the claims noted above, the second amended complaint appears little more than a cosmetic retooling of the first. In any event, as discussed below, the Court will ultimately conclude that the plaintiffs' state and federal statutory claims are sufficient as they are presently pled.

Moreover, and perhaps most importantly, the plaintiffs have not explained why, if acting with due diligence, they were unable to seek the Court's leave before the parties had fully briefed the defendant's motion for judgment on the pleadings. It appears both parties have expended a great deal of time and resources on briefing this motion. This includes the defendant's brief, an opposition, and a reply, not to mention plaintiffs' surreply. The surreply, filed without request for leave, generated a motion to strike on the part of the defendants, an opposition, a reply and a motion for leave to file a surreply from the plaintiffs. With so much paper before the Court, it is incumbent on the plaintiffs

6

to explain why justice requires allowing them to amend, since to grant the motion in its entirety now would, in a sense, send the litigation back to square one. Although the substance of the second amended complaint appears similar to the first, granting leave could nonetheless be prejudicial to the defendant, in that it would, at a minimum, be required to carefully review the second amended complaint, file another answer, and possibly conduct additional research and retool its earlier arguments for dismissal.

In the Court's view, the plaintiffs have not justified their motion by the terms of Federal Rule 15(a). However, as noted, the plaintiffs will be permitted to eliminate Counts One, Four, Six, Eight, and Ten from the amended complaint as it currently stands. In that regard alone, the motion is granted. It is otherwise denied.

The Court denies the plaintiffs' Motion for Leave to Supplement the Second Amended Complaint or in the Alternative the First Amended Complaint. This denial comes for reasons similar to those stated above, in that the plaintiffs have not justified their delay in presenting this material, in light of the extensive briefing on the defendant's motion and the likelihood of prejudice.

**III. Judgment on the Pleadings Standard**

The discussion now shifts to the defendant's motion for judgment on the pleadings. "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir.2007) (internal citation and quotation marks omitted).

7

The same standard for deciding a Rule 12(b)(6) motion to dismiss applies to a Rule 12(c) motion for judgment on the pleadings. Roth v. Guzman, 650 F.3d 603, 605 (6th Cir.2011). A 12(b)(6) motion tests the sufficiency of the complaint. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

**IV. Law and Argument**

The plaintiffs have voluntarily dismissed Counts One, Four, Six, Eight, and Ten, and the defendant concedes the sufficiency of Count Nine. Therefore, the only claims remaining for the Court's consideration are those under the Ohio Consumer Sales Practices Act, the Truth in Lending Act, and the Fair Debt Collection Practices Act, along with the plaintiffs' claim for negligent infliction of emotional distress. These claims are addressed below.

**A. Ohio Consumer Sales Practices Act**

The Ohio Consumer Sales Practices Act ("OCSPA") allows a consumer to recover against a "supplier" who commits deceptive, unfair, or unconscionable acts before, during or after a consumer transaction. Ohio Rev. Code Ann. §§ 1345.01 - 03. In this instance, the plaintiffs allege that CitiMortgage, either as owner or servicer of the mortgage, violated the OCSPA when it charged them attorneys' fees and costs, relating

8

to the 2009 foreclosure. The plaintiffs contend that by so charging them, the defendant committed unfair, deceptive, and unconscionable acts or practices and violated the settlement agreement, the modification of the agreement, and the stipulated final dismissal.

CitiMortgage argues that the plaintiffs' claim fails as a matter of law, because, in its view, it is relieved of liability under a provision of the OCSPA exempting transactions between "financial institutions" and their customers. Ohio Rev. Code. Ann. § 1345.01(A). A "financial institution" can be a national bank, a federal savings association, a bank, a banking association, a trust company, a savings and loan association, or other banking institution incorporated or organized under the laws of any state. Ohio Rev. Code Ann. § 5725.01 (West).

The defendant contends that it qualifies as a financial institution because it is an entity that "lends money when it extends credit." (Doc. 20-1 at 6, citing Lewis v. ACB Business Services, Inc., 135 F.3d 389, 412 (6th Cir. 1998). At the present posture, this argument has no merit, as CitiMortgage has only raised an issue of fact that cannot be resolved on this motion. Besides the fact that CitiMortgage has put on no evidence that it "lends money when it extends credit," the complaint indicates that CitiMortgage did not originate the mortgage loan in question. The plaintiffs allege that CitiMortgage became either the owner or servicer of the loan after they defaulted, and they maintain that the defendant was acting as a "debt collector" when it took the actions challenged in this suit. Even if its true that CitiMortgage "lends money when it extends credit" in some context, the amended complaint does not suggest it is the case in this instance. See Munger v. Deutsche Bank, 2011 WL 2930907, at *10 (N.D. Ohio July 18, 2011)

9

(concluding that a bank's status as a "financial institution" with regard to one transaction does not exempt it from suit under OCSPA if it acted as a debt collector in another).

Debt collectors, whether as loan servicers or assignees, are not explicitly exempted under the act. See, e.g., Munger v. Deutsche Bank, 2011 WL 2930907, at *10 (N.D. Ohio July 18, 2011); Kline v. MERS, Inc., 2011 WL 692235, at *4–5 (S.D.Ohio Feb.18, 2011).  As a consequence, CitiMortgage's assertion that it "lends money when it extends credit" is not sufficient, at this stage in the proceedings, to defeat the plaintiffs' claim that the defendant was acting as a debt collector in violation of the OCSPA.

The defendant also maintains that it is exempt from suit under OCSPA because it qualifies as a "dealer in intangibles." The defendant notes that the term "dealer in intangibles" includes "every person who keeps an office or other place of business in this state and engages at such office or other place in a business that consists primarily of lending money . . . with a view to profit or personal earnings." Ohio Rev. Code Ann. § 5725.01 (West). CitiMortgage claims that the Settlement Agreement, the modification agreement, and the assignment of the mortgage indicate that it lends money with a view to profit. In the Court's view, the defendant's general reference to these documents offers little sense as to whether its business "consists primarily of lending money . . . with a view to profit." Whether CitiMortgage is a "dealer in intangibles" is an issue of fact, not susceptible to the present motion.

Finally, CitiMortgage suggests that it is an exempted financial institution because its parent company is a national bank. In this instance, the fact that the defendant's parent company is a national bank says little about the defendant's status under the act. The act exempts banks, not bank subsidiaries, and CitiMortgage does not explicitly

10

argue that it is a bank. And based on the allegations in the complaint, CitiMortgage was not acting as a bank but as a debt collector when it took the actions being challenged in this suit. The plaintiffs state that only after they defaulted did CitiMortage become the owner and/or servicer of the mortgage. On a motion for judgment on the pleadings, the Court accepts the allegations in the complaint as true and grants the motion only when there is no material issue of fact and the moving party is entitled to judgment as a matter of law. In this instance, CitiMortgage has not met the standard

CitiMortgage's motion will be denied as to the plaintiffs' OCSPA claim.

### B. Truth in Lending Act

The plaintiffs allege violations of the Truth in Lending Act on the ground that CitiMortgage failed to respond to requests for information pursuant to 15 U.S.C. § 1641(f)(2). That section, entitled "Liability of Assignees," requires that a servicer of a consumer obligation, upon written request of the obligor, "provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." 15 U.S.C. § 1641(f)(2). Section 1640 describes the consequences for a failure to comply with this requirement, providing for actual and statutory damages. 15 U.S.C. § 1640(a). In this instance, the plaintiffs maintain that they are entitled to both, because CitiMortgage, as the servicer and owner of the debt, never responded to their requests for information.

The defendant contends that this claim fails as a matter of law, because TILA liability under section 1641 extends only to creditors and not to loan servicers. While CitiMortgage is correct that loan servicers are not subject to liability under the act, its argument has no merit, because the plaintiffs allege, and the Loan Modification

11

Agreement indicates, that CitiMortgage is the owner of the debt, in addition to allegedly being the loan servicer. Pursuant to 15 U.S.C. § 1641, "[a] servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section *unless* the servicer is or was the owner of the obligation." Therefore, because the plaintiffs maintain that CitiMortgage is both the servicer and owner, it is not relieved of liability on this ground.

The defendant also contends that the plaintiffs' claim for statutory damages fails on its face because timing violations alone do not qualify for statutory damages in the Sixth Circuit. The Court disagrees. First, the plaintiffs do not allege a timing violation. Rather, they allege a total non-disclosure violation as the defendant allegedly *never* provided them with the information required by section 1641(f)(2). (See Amended Complaint ¶¶72,73). Second, neither of the cases cited by the defendant hold that statutory damages are unavailable to a plaintiff claiming a section 1641(f)(2) violation. Instead, both cases grapple with the propriety of statutory damages relating to claims of improper form and timing under 15 U.S.C. § 1638(b). See U.S. v. Petroff-Kline, 557 F.3d 285, 296 (6th Cir. 2009); Baker v. Sunny Chevrolet, Inc., 349 F.3d 862 (6th Cir. 2003). The plaintiffs in the present case allege no such violation, and CitiMortgage does not explain how the cited cases might be otherwise applicable in this instance. Its argument is therefore rejected. The Court also rejects the defendant's argument that the plaintiffs failed to adequately plead actual damages.

CitiMortgage's motion will be denied as to the plaintiffs' TILA claim.

**C. Fair Debt Collection Practices Act**

The defendant argues that the plaintiffs' FDCPA claim fails on its face because it is not a "debt collector" under the act. The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a (West).

Generally, "[a] bank that is 'a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts.'" Montgomery v. Huntington Bank, 346 F.3d 693, 699 (6th Cir. 2003) (citing Stafford v. Cross Country Bank, 262 F.Supp.2d 776, 794 (W.D.Ky. 2003). However, when it comes to an entity which did not originate the debt, as is the case here, the distinction between "creditor" or "debt collector" status depends on the state of the debt at the time it was acquired. Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 359 (6th Cir. 2012). If the debt was defaulted at the time of acquisition, the entity may be treated as a debt collector for purposes of the FDCPA. Id.

In this instance, the amended complaint, when viewed in a light most favorable to the plaintiffs, indicates that the debt was defaulted at the time it was acquired by CitiMortgage. The plaintiffs filed for bankruptcy on 12 October 2004, and the debt was assigned to CitiMortgage on 15 January 2005, while bankruptcy proceedings were pending. (Amended Complaint ¶12; Defendant's Exhibit B). The amended complaint provides that the defendant "appears to be the current mortgage owner and/or servicer who became so after the account was in default." (Amended Complaint ¶6). Based on

13

these facts, not only is it reasonable to infer that the assignment occurred during the plaintiffs' default, it would be unreasonable not to make such an inference.

CitiMortgage, however, urges the Court to take the latter route and conclude that the assignment occurred prior to default, based on a discrepancy it perceives in the amended complaint. (See Amended Complaint ¶12). The allegation highlighted by CitiMortgage states that "[o]n October 12, 2004, Plaintiffs filed a Chapter 13 bankruptcy plan to reorganize their financial obligations to repay arrearage on their mortgage held by Defendant." It seems that, in CitiMortgage's view, this sentence should be interpreted to mean that "the plaintiffs filed for bankruptcy in order to pay arrearage on a mortgage that had been held by the defendant since before plaintiffs' default." It is the Court's opinion that, if anything, the allegation is ambiguous as to the state of the debt when CitiMortgage obtained it, and this ambiguity is not sufficient to defeat the plaintiffs' claim.

Moreover, it is curious that CitiMortgage would urge an interpretation that so clearly contradicts the evidence that *it submitted* for the Court's review. It was CitiMortgage who provided the Court with a document indicating that it owned the debt and that the assignment occurred on 15 January 2005, at which time the plaintiffs had been in bankruptcy for over three months. CitiMortgage cannot have it both ways. Viewing the allegations and the evidence against the applicable standard, the Court cannot reasonably conclude that CitiMortgage acquired the debt prior to default. For these reasons, the defendant's argument has no merit.

CitiMortgage's motion will be denied on the FDCPA count.

14

**D. Negligent Infliction of Emotional Distress**

The defendant maintains that the plaintiffs' claim for negligent infliction of emotional distress fails as a matter of law, and the Court agrees. "[R]ecovery for negligent infliction of severe emotional distress has typically been limited to instances where the plaintiff has either witnessed or experienced a dangerous accident and/or was subjected to an actual physical peril." Kulch v. Structural Fibers, Inc., 677 N.E.2d 308, 329 (Ohio 1997). The facts of the present case do not fall into either category.

As to the plaintiffs' negligent infliction of emotional distress claim, the defendant's motion will be granted.

**V. Conclusion**

For the reasons stated above, the defendant's motion for partial judgment on the pleadings is granted in part and denied in part. (Resolving Doc. 20). The plaintiffs' amended motion for leave to file a second amended complaint is granted in part and denied in part. (Resolving Doc. 31). The plaintiffs' motion for leave to supplement the second amended complaint or, in the alternative, the first amended complaint is denied. (Resolving Doc. 40)

The plaintiffs' first amended complaint is the operative pleading in this matter. Of the claims asserted therein, only the OCSPA, FDCPA, TILA, and RESPA claims survive.

IT IS SO ORDERED.

                                         /s/ Lesley Wells
                                         UNITED STATES DISTRICT JUDGE

Date: 25 January 2013